```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| CORY NICHOLAS SKINNER : | |
|     Petitioner : | |
|   v. : | Criminal No. DKC 18-0024 |
|  | Civil Action No. DKC 19-2359 |
|  : | |
| UNITED STATES OF AMERICA | |
|     Respondent : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner, Cory Nicholas Skinner.  (ECF Nos. 34; 43).[1] The Government responded, (ECF No. 50), but Petitioner did not file a reply.  For the following reasons, the Motion will be denied.

**I.  Background**

Cory Skinner pleaded guilty to Count One of a seven-count indictment pursuant to a plea agreement.  Count One charged conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, as well as quantities of cocaine and buprenorphine.  The plea was entered pursuant to Fed.R.Crim.P. 11(c)(1)(C), with the parties agreeing to a sentence of 84-months

---

[1] Petitioner's motion for leave to file supplement out of time, (ECF No. 42), and the Government's motion for leave to file out of time, (ECF No. 46), will be granted.

imprisonment.  The plea also contained stipulations as to the sentencing guideline offense level.

The case, according to the stipulated facts in the guilty plea and the affidavit in support of the initial complaint, arose from an investigation by the Conway, Arkansas, Police Department into the death of a University of Arkansas medical-science police officer from a drug overdose.  Packaging found under the deceased's head had been shipped from Baltimore at the Carroll Post Office.  Another similar package destned for North Carolina was identified and a controlled delivery took place.  The recipient told law enforcement how the purchase was made.  That package was opened and Mr. Skinner's fingerprint was found on the inner flap.  A similar package destined for Arizona likewise contained drugs and Mr. Skinner's fingerprints.  Over 20 packages were intercepted between September 2017 and January 2018.  Undercover purchases followed, along with extensive surveillance.

As noted above, the parties agreed to a sentence of 84 months, regardless of the guideline determination, along with dismissal of the other charges, and the agreement of the Government not to prosecute him for any charges in connection with the Arkansas package linked to the fatal overdose.  The Government would not be precluded from prosecuting him for any other fatal overdose, if any, discovered after he signed the plea agreement.

## II. Legal Background

To be eligible for relief under 28 U.S.C. § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law[.]"  28 U.S.C. § 2255(a).  A *pro se* movant is entitled to have his arguments reviewed with appropriate consideration.  *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  But if the 28 U.S.C. § 2255 motion, along with the files and records of the case, conclusively show that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily.  28 U.S.C. § 2255(b).

A claim for relief brought pursuant to 28 U.S.C. § 2255 that was not raised on appeal is procedurally defaulted and will only be considered if the petitioner can show cause and actual prejudice, or that the petitioner is actually innocent.  *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999) ("In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the

3

errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493 (citation omitted). Claims of ineffective assistance of counsel may be brought in a 28 U.S.C. § 2255 motion even when not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Statements made by a defendant during a hearing to accept his guilty plea are subject to a strong presumption of veracity, and challenges under 28 U.S.C. § 2255 that contradict these statements may generally be dismissed without an evidentiary hearing:

> "[A] defendant's solemn declarations in open court . . . 'carry a strong presumption of verity'" because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. "Indeed, because they do carry such a presumption, they present 'a formidable barrier in any subsequent collateral proceedings.'" Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always "palpably incredible" and "patently frivolous or false." Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an

4

> evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) (internal citations omitted).

### III. Analysis

Mr. Skinner alleges that (1) his trial attorney was ineffective in failing to advise him properly regarding the elements of conspiracy; (2) his sentence was improperly enhanced under (then applicable) U.S.S.G. § 2D1.1(b)(15)(B); and (3) his sentence was improperly enhanced under U.S.S.G. §2D1.1(b)(1).

#### A.   Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  There is a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Id.*, at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).

In the context of a § 2255 petition challenging a conviction following a guilty plea, a criminal defendant establishes prejudice by demonstrating "a reasonable probability that, but for

5

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Mooney*, 497 F.3d 397, 401 (4th Cir. 2007). Moreover, a petitioner "must convince the court" that such a decision "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citation omitted). "The challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (citation omitted).

For his ineffective assistance of counsel claim, Mr. Skinner contends that Mr. Walsh-Little, his second public defender, "purposely misinformed" him of the definition and application of conspiracy law but that he informed his lawyer that his case wasn't a conspiracy because there were no other culpable participants with knowledge who assisted him with the mailings. He expressed, allegedly, reluctance to plead to conspiracy because it would be perjury. He further asserts that his lawyer said that buying drugs from someone else would also qualify, but that he has since learned that is incorrect. He also now knows that the conspiracy charge allowed the government to seek four enhancements under the guidelines that would not have been available had he pled to

6

possession with intent to distribute instead. Ultimately, the relief he requests is to remove the leadership enhancement from his presentence investigation ("PSI") report so that he would be able to participate in programs while incarcerated.

Petitioner's belated assertions of ineffective representation fail. He was repeatedly advised of the elements of the conspiracy charge in the written plea agreement and at the rearraignment/guilty plea proceeding on May 18, 2018. He seems to acknowledge that but asserts that the misinformation was whether the facts of his case would support a conspiracy charge. But as early as the initial appearance/arraignment in February 2018, the Government asserted that Mr. Skinner worked with co-conspirators. The stipulated facts include that:

> Maryland postal inspectors discovered the defendant did not act alone when distributing controlled substances through the United States mail. Instead, the Defendant, knowing that certain individuals were unusually vulnerable due to a physical or mental condition, involved those individuals in dropping packages containing heroin and cocaine in July 2017 and August 2017 respectively.

(ECF No. 18-1, at 1). He now claims that those individuals didn't "know" of the illegal contents of the packages, were not paid, and were chosen at random. As people who simply performed a favor for

7

him, he suggests they cannot be co-conspirators, and he cannot have been a leader, organizer, or manager.

The prejudice Petitioner points to is not that he was innocent of selling heroin on the internet or that he was improperly subject to a five-year mandatory minimum.  Instead, he contends that he should not have received a heightened sentence because the guideline enhancements should not have been applied.  The Government, as is typical, disagrees with Mr. Skinner's assessment.  It argues that Mr. Skinner cannot overcome the sworn statements he made in open court during his guilty plea.  The Government also points out that (1) the Government was not willing to accept a plea to any other count or to a lesser sentence, and (2) that the alternative for Mr. Skinner was to face the possibility of a superseding indictment including a charge for the fatal overdose which would carry a 20-year mandatory minimum sentence.

Petitioner falls short of presenting a meritorious ground for relief.  He stated under oath that he understood the charge in Count One, knew the elements the Government would have to prove, agreed to the full statement of facts, stipulated to the advisory guideline factors, and understood the extent of the mutual promises as well as the terms of the "C" plea.  He said he had enough time to consult with counsel who had answered all of his questions,

8

and, ultimately, that he was satisfied with his representation. His after-the-fact disappointment with the terms of his plea agreement and belated assertion that he alone was culpable are insufficient. He hasn't even said that he would not have pled guilty and would have gone to trial. In light of the possible prosecution for the overdose death, and the Government's negotiating position, Petitioner also has not shown that such a course would have been rational. This is not a case where the guidelines drove the terms of the "C" plea. Instead, it appears that the parties negotiated a term of months for incarceration and then explored the sentencing guidelines. Regardless, Petitioner has not shown grounds to establish ineffective assistance of counsel or prejudice.

    **B.    Improper Application of Guideline Enhancements**

Only certain types of sentencing issues may be raised in a § 2255 motion.

> [B]y its terms, § 2255 does not allow for a court's consideration and correction of *every* alleged sentencing error. *See* [*Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298 (1974)]. Rather, the statute provides four avenues by which a petitioner can seek relief:
> 
> > A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground [1] that the sentence was imposed in

> violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> 28 U.S.C. § 2255(a).  The Supreme Court has interpreted this provision such that if the alleged sentencing error is neither constitutional nor jurisdictional, a district court lacks authority to review it unless it amounts to "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346, 94 S.Ct. 2298 (internal quotation marks omitted).  This standard is only satisfied when a court is presented with "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (internal quotation marks omitted).  For the reasons that follow, we are constrained to decide that sentencing a defendant pursuant to advisory Guidelines based on a career offender status that is later invalidated does not meet this remarkably high bar.

*United States v. Foote*, 784 F.3d 931, 936 (4th Cir. 2015) (emphasis in original).  Errors in the application of sentencing guidelines typically do not amount to a miscarriage of justice.  *See Mikalajunas*, 186 F.3d at 492, 495-96.

Petitioner merely challenges the application of the vulnerable participant and firearm enhancements. These contentions are not cognizable as stand-alone issues.

### IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that "reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can "demonstrate both (1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the

11

district court was correct in its procedural ruling." *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (internal quotation marks and citation omitted).

Petitioner does not satisfy the above standards. Accordingly, a certificate of appealability will not issue.

## V. Conclusion

For the forgoing reasons, the motions for leave to file out of time will be granted. Mr. Skinner's Motion to Vacate will be denied. In addition, a certificate of appealability will be denied. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
